**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:         _____  \_\_\_ - \_\_\_

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

                    Plaintiff,

    v.

MORELAND AUTO GROUP, LLLP,
KIDS' FINANCIAL, INC., d/b/a C.A.R. FINANCE,
KIDS' AUTOMOTIVE, INC., and
BRANDON FINANCIAL, INC.

                    Defendants.

**COMPLAINT AND JURY TRIAL DEMAND**

**NATURE OF THE ACTION**

This is a public enforcement action under Title VII of the Civil Rights Act of 1964, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices consisting of retaliation for protected activity, and to provide appropriate relief to Charging Party Lucille Fancher, who was adversely affected by such practices. As alleged with more particularity below, Plaintiff Equal Employment Opportunity Commission alleges that the Defendants - part of a single employer/integrated enterprise – retaliated against Ms. Fancher by terminating her employment because she participated as a class member in the settlement of a prior EEOC enforcement action to correct unlawful employment practices consisting of a sexually hostile work environment and retaliation. *EEOC v. Moreland Auto Group, LLP, d/b/a Kids' Automotive, Inc., Kids' Financial, Inc., and Brandon Financial, Inc.*, 06-cv-01903-EWN-KLM) ("*Moreland I*").

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to § 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), and § 102 of the Civil Rights Act of 1991, as amended, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

**Plaintiff EEOC:**

3. Plaintiff Equal Employment Opportunity Commission ("EEOC" or "the Commission") is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by § 706 (f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

**Defendant Moreland Auto Group, LLLP:**

4. Defendant Moreland Auto Group, LLLP ("Moreland Auto Group"), is a Colorado limited liability limited partnership in good standing.

5. According to records on file with the Colorado Secretary of State, Moreland Auto Group's principal address is 1655 E. Layton Drive, Englewood, CO 80013.

6. According to records on file with the Colorado Secretary of State, Moreland Auto Group's sole general partner is W. Douglas Moreland.

2

7. W. Douglas Moreland ("Mr. Moreland") is also known as William Douglas Moreland, William D. Moreland, W.D. Moreland, and "Dealin' Doug."

8. According to records on file with the Colorado Secretary of State, Moreland Auto Group's registered agent is Mr. Moreland.

**Defendant Kids' Financial, Inc., d/b/a C.A.R. Finance:**

9. Defendant Kids' Financial, Inc. ("Kids' Financial"), is a Colorado corporation in good standing.

10. According to records on file with the Colorado Secretary of State, C.A.R. Finance is a registered trade name of Kids' Financial.

11. According to records on file with the Colorado Secretary of State, Kids' Financial's principal address is 1655 E. Layton Drive, Englewood, CO 80013, the same as Moreland Auto Group's principal address.

12. According to records on file with the Colorado Secretary of State, Kids' Financial's board of directors consists of Mr. Moreland, Carol C. Moreland, and Philip Harris.

13. Philip Harris ("Mr. Harris") is also known as Philip Alan Harris, Philip A. Harris, and Phil Harris.

14. According to records on file with the Colorado Secretary of State, Kids' Financial's registered agent is Mr. Moreland.

15. At all relevant times, Mr. Moreland was the majority owner of Kids' Financial.

16. At all relevant times, Mr. Moreland was the President of Kids' Financial.

**Defendant Kids' Automotive, Inc.:**

17. Defendant Kids' Automotive, Inc. ("Kids' Automotive"), is a Colorado corporation in good standing.

18. According to records on file with the Colorado Secretary of State, Kids' Automotive's principal address is 1655 E. Layton Drive, Englewood, CO 80013, the same as Moreland Auto Group's and Kids' Financial's principal address.

19. According to records on file with the Colorado Secretary of State, Kids' Automotive's board of directors consists of Mr. Moreland, Carol C. Moreland, and Mr. Harris, the same as Kids' Financial's board of directors.

20. According to records on file with the Colorado Secretary of State, Kids' Automotive's registered agent is Mr. Moreland.

21. At all relevant times, Mr. Moreland was the majority owner of Kids' Automotive.

22. At all relevant times, Mr. Moreland was the President of Kids' Automotive.

**Defendant Brandon Financial, Inc.:**

23. Defendant Brandon Financial, Inc. ("Brandon Financial"), is a Colorado corporation in good standing.

24. Brandon Financial was formed to provide financing for some of the Dealerships in the Moreland Automotive Group. *Moreland I* Harris Deposition Exhibit R, p. 1, ¶ 3.

25. According to records on file with the Colorado Secretary of State, Brandon Financial's principal address is 1300 W. Alameda Avenue, Suite B, Denver, CO 80223.

4

26. According to records on file with the Colorado Secretary of State, Brandon Financial's board of directors consists of Mr. Moreland, Carol Candice Moreland, and Sharon Todd.

27. According to records on file with the Colorado Secretary of State, Brandon Financial's registered agent is Mr. Harris at 7553 S. Ames Way, Littleton, CO 80128 (street address), and at 9701 W. Chatfield Avenue, Unit C, Littleton, CO 80128-5029 (mailing address).

28. At all relevant times, Mr. Moreland was the majority owner of Brandon Financial.

29. At all relevant times, Mr. Moreland was the President of Brandon Financial.

**Defendants and Other Entities Comprising a Single Employer/Integrated Enterprise:**

30. Upon information and belief, the named Defendants and other automotive industry-related entities owned by Mr. Moreland ("Moreland entities") comprise a single employer/integrated enterprise ("the Enterprise"), such that employees of all of the Moreland entities should be aggregated for purposes of determining the applicable damage cap under Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

31. In prior litigation before the National Labor Relations Board, there was an adjudication and finding of a single employer/integrated enterprise. *Kids' Automotive, Inc./Kids' Financial, Inc./Brandon Financial, Inc., Joint Employer and/or Single Employer, and Jim Abrams, An Attorney*, NLRB Case No. 27-CA-18809 (5/13/2005) (Metz, A., Administrative Law Judge), pp. 1-3, 7-8.

5

32. All of the Moreland entities in Colorado utilize the same employee handbook.

33. Employees at the various Moreland entities are allowed to transfer from one entity to another. For example:

   a. Mr. Harris transferred from Finance Director at the management company to his current position as General Manager of Kids' Automotive, Kids' Financial, and Brandon Financial. *Moreland I* Harris Deposition, 33:5-18, 157:18-158:15, 159:7-12, 159:19-25, 182:24-183:17. [1]

   b. An employee transferred to Brandon Financial from Colorado Jeep, another Moreland-owned car dealership. *Moreland I* Harris Deposition, 247:21-22; *Moreland I* Harris Deposition Exhibit R, p. 1, ¶ 3.

   c. After an employee was terminated from Kids' Automotive, an employee transferred from the management company to take the terminated employee's place at Kids' Automotive. *Moreland I* Harris Deposition, 162:2-7.

   d. Kids' Automotive Office Manager Karen Henry previously worked for four different Moreland-owned car dealerships: Centennial Chrysler, Cherry Creek Dodge, Grand Kia, and Kids Automotive. *Moreland I* Henry 30(b)(6) Deposition, 8:17-9:17, 12:21-13:2, 14:19-25.

34. All of the Moreland entities in Colorado operate under a single management company that provides centralized human resource services, as well as other services, such as service and accounting. *Moreland I* Harris Deposition, 157:18-158:15, 182:24-183:17.

---

[1] Citations to transcripts are given as "(page):(line)-(line)" or "(page):(line)-(page):(line)."

35. From 1986 to 2000, Mr. Harris was the "Finance Director for all of the Moreland stores" in Colorado and other dealerships in Illinois and Nevada. *Moreland I* Harris Deposition, 33:5-18.

36. As the Finance Director, Mr. Harris worked for the management company that provided certain services for all the Moreland stores in Colorado and other states. *Moreland I* Harris Deposition, 157:18-159:12.

37. As Finance Director at the management company, Mr. Harris' duties included managing finance offices, the flow of business through those offices, and the Finance Managers in the finance offices. *Moreland I* Harris Deposition, 33:24-34:10.

38. The management company also provided human resource services to the various Moreland stores in Colorado. *Moreland I* Harris Deposition, 182:24-183:17.

39. Mr. Moreland was generally known as the owner of all the Moreland stores in Colorado. *Moreland I* Harris Deposition, 49:19-52:10.

40. As the owner, Mr. Moreland was personally involved in certain personnel matters at the various Moreland stores in Colorado. For example:

   a. During a period of turmoil at Kids' Automotive and Kids' Financial, Mr. Moreland personally interceded to resolve a personnel matter. *Moreland I* Harris Deposition, 40:25-41:9.

   b. After a Brandon Financial employee complained directly to Mr. Moreland in June 2003, Mr. Moreland and Mr. Harris reduced the employee's pay, downgraded the employee's full-time position to a part-time job, and offered the employee a transfer from Brandon Financial to open positions in other dealerships. *Moreland I* Harris Deposition, 61:25-63:19, 64:16-

67:1, 70:19-71:7; *Moreland I* Harris Deposition Exhibit R, p. 3, ¶ 12, p. 4, ¶ 13, pp. 4-5, ¶ 18.

41. As the owner, Mr. Moreland made significant business decisions regarding the various Moreland stores in Colorado. For example:

   a. Mr. Moreland hired an independent Certified Public Accountant to review the financial records of Kids' Automotive, Kids Financial, and Brandon Financial at the end of each year. *Moreland I* Harris Deposition, 228:8-13.

   b. When an individual approached Brandon Financial in July 2001 about a joint business venture, Mr. Moreland was involved in the discussions. *Moreland I* Harris Deposition Exhibit R, p. 2, ¶ 4.

   c. Mr. Moreland was involved in Kids' Automotive's decision to drop a J.D. ByRider franchise. *Moreland I* Harris Deposition, 30:11-16, 46:4-8; *Moreland I* Harris Deposition Exhibit R, p. 2-3, ¶ 8.

42. Upon information and belief, Mr. Moreland holds a significant, if not controlling share, in each of the Moreland entities.

43. Upon information and belief, all of the Moreland entities share at least some common officers.

44. Upon information and belief, all of the Moreland entities share at least some common members of their boards of directors.

45. At all relevant times, the Enterprise has continuously been doing business in the State of Colorado.

46. At all relevant times, the Enterprise has continuously had at least fifteen employees.

47. At all relevant times, the Enterprise has continuously been an employer engaged in an industry affecting commerce within the meaning of §§ 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

**General Allegations**

48. Ms. Fancher was employed by the Defendants and the Enterprise from approximately 1998 until her involuntary termination on June 3, 2008.

49. Ms. Fancher worked as a Collector for approximately five years under Collection Manager Jim Malatirre.

50. Beginning in approximately late 2002, Ms. Fancher worked in the Legal Department under Supervisor Bob York.

51. Ms. Fancher worked full-time until approximately September 2007, when she began working part-time.

52. During her tenure with the Defendants, Ms. Fancher at times received pay checks from Kids' Automotive, C.A.R. Finance, Brandon Financial, and J.D. Byrider.

53. On September 25, 2006, the EEOC filed *Moreland I*, alleging claims for a sexually hostile work environment, arising out of unresolved reports to management by Ms. Fancher and other employees of pornography on computers in the workplace, and retaliation.

54. In *Moreland* I, the EEOC sought relief on behalf of two charging parties and a class of female employees, including Ms. Fancher.

55. In approximately January 2008, Ms. Fancher was called into a meeting with Mr. Harris and the attorney representing the *Moreland I* defendants, Timothy L. Nemechek, Esq.

56. During the meeting in January 2008, Ms. Fancher was told that if she received settlement money as a result of the *Moreland I* lawsuit, she would no longer have a job.

57. On March 11, 2008, Ms. Fancher was deposed for purposes of the *Moreland I* lawsuit.

58. While the *Moreland I* litigation was ongoing, Mr. Harris told EEOC that any then-current employee who participated as a class member in the EEOC lawsuit was a disloyal employee.

59. While the *Moreland I* litigation was ongoing, Mr. Harris told EEOC that if there was a settlement with the EEOC of the *Moreland I* lawsuit, any then-current employee who received payment from the settlement would lose her job with Moreland.

60. In May 2008 a settlement agreement was reached by the parties in *Moreland I*.

61. The settlement agreement did not require that Ms. Fancher or any other then-current employee resign.

62. The Court entered an Order directing the parties to file final settlement papers with the Court on or before June 3, 2008. *Moreland I*, Doc. 163.

63. On Friday, June 3, 2008, the same day settlement papers were due to the Court, Ms. Fancher was terminated.

64. Because of Ms. Fancher's termination, the settlement papers were not filed with the Court on June 3, 2008.

65. On August 22, 2008, the final settlement agreement was filed with the Court. *Moreland I*, Doc. 170.

66. The final settlement of *Moreland I* specifically excluded and did not resolve any claims arising out of Ms. Fancher's termination.

67. Cheryl Brooks was offered a share of the settlement but did not respond or otherwise take action to accept her settlement share.

68. Ms. Brooks' employment continued.

69. Ms. Fancher accepted her share of the EEOC settlement.

70. Ms. Fancher's claim for retaliatory discharge was specifically excluded from both the final settlement agreement filed with the Court and the release Ms. Fancher executed.

71. On November 17, 2008, more than thirty days prior to the institution of this lawsuit, Ms. Fancher filed EEOC Charge No. 541-2009-00672, alleging that she was terminated in retaliation for her opposition to discrimination and for her participation in and support of the prior EEOC charges, the resulting investigation, the lawsuit [*Moreland I*], and the settlement thereof.

72. The EEOC provided the Defendants and the Enterprise with notice of the filing of the charge.

73. The EEOC conducted an investigation of the allegations contained in Ms. Fancher's charge of discrimination.

74. On September 13, 2010, the EEOC issued a determination, finding reasonable cause to believe Ms. Fancher's allegations to be true.

75. On September 13, 2010, the EEOC invited the Defendants to engage with EEOC in an informal effort to resolve the matter through conciliation, and provided Defendants with an outline listing the provisions the Commission was seeking in conciliation of the charge.

76. At the request of Defendants, EEOC allowed two extensions of time for Defendants to accept or reject EEOC's invitation to participate in the conciliation process.

77. By letter dated September 17, 2010, the EEOC informed Defendants that EEOC considered all the auto-related businesses in which Mr. Moreland holds an interest to constitute a single employer/joint enterprise, and identified twenty-five additional entities and trade names known to EEOC at that time and believed to be part of such joint or integrated enterprise.

78. In a telephone conversation on December 7, 2010, the Defendants advised the EEOC that they were declining the EEOC's invitation to conciliate.

79. All conditions precedent to the institution of this lawsuit have been fulfilled.

### Claim For Relief:  Title VII Retaliation

80. Plaintiff EEOC hereby realleges, reasserts, and incorporates the foregoing paragraphs with the same force and effect as if fully set forth herein.

81. Ms. Fancher engaged in conduct protected by Title VII when she (a) reported to management sexually offensive conduct in the workplace; (b) supported the prior EEOC charges; (c) supported and participated in the investigation of those

charges; (d) participated in *Moreland I* as a class member; and (e) participated in the settlement of *Moreland I*.

82. The Defendants and the Enterprise engaged in unlawful retaliatory practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) by terminating Ms. Fancher in retaliation for her protected conduct.

83. The effect of the Defendants' and the Enterprise's unlawful retaliatory practices was to deprive Ms. Fancher of equal employment opportunities and otherwise adversely affect her status as an employee because she engaged in protected activity under Title VII.

84. The unlawful employment practices complained of above were intentional.

85. The unlawful employment practices complained of above were done with malice or reckless indifference to the federally protected rights of Ms. Fancher.

86. As a result of the retaliation, Ms. Fancher suffered harm, including but not limited to lost earnings, and emotional distress.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in any employment practice which is taken in retaliation against any individual for engaging in an activity protected from retaliation under Title VII.

B. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for all persons who engage in

protected activity under Title VII, and which eradicate the effects of its past and present unlawful employment practices.

  C.  Order Defendants to make whole Charging Party Lucille Fancher by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement of Charging Party Lucille Fancher, with all attendant rights and benefits, or front pay in lieu thereof.

  D.  Order Defendants to make whole Charging Party Lucille Fancher by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including wages, benefits, job search and relocation expenses, and medical expenses, if any, in amounts to be determined at trial.

  E.  Order Defendants to make whole Charging Party Lucille Fancher by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described above, including, but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in an amount to be determined at trial.

  F.  Order Defendants to pay Charging Party Lucille Fancher punitive damages for its malicious and reckless conduct described above, in an amount to be determined at trial.

  G.  Grant such further relief as the Court deems necessary and proper in the public interest.

  H.  Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this Complaint.

Dated: June 9, 2011.

                Respectfully submitted,

                s/ D. Andrew Winston
                Senior Trial Attorney
                303.866.1361
                andrew.winston@eeoc.gov

                RITA BYRNES KITTLE
                Supervisory Trial Attorney
                303.866.1347
                rita.kittle@eeoc.gov

                U.S. EQUAL EMPLOYMENT
                 OPPORTUNITY COMMISSION
                Denver Field Office
                303 E. 17th Ave., Suite 410
                Denver, CO 80203

                MARY JO O'NEILL
                Regional Attorney

                U.S. EQUAL EMPLOYMENT
                 OPPORTUNITY COMMISSION
                Phoenix District Office
                330 N. Central Avenue, Suite 690
                Phoenix, AZ  85012-2504

                P. DAVID LOPEZ
                General Counsel

                JAMES L. LEE
                Deputy General Counsel

        GWENDOLYN YOUNG REAMS
        Associate General Counsel

        U.S. EQUAL EMPLOYMENT
         OPPORTUNITY COMMISSION
        131 M Street, NE
        Washington, D.C.  20507

**PLEASE NOTE:**
**For purposes of service upon the EEOC,**
**it is sufficient that pleadings, notices, and**
**court documents be served upon the**
**Trial Attorneys.**